IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TINA BUTLER, et al.,          )
                              )
        Plaintiffs,           )
                              )          Civil Action No.
v.                            )
                              )          99-AR-1580-S
                              )
SILGAN CONTAINERS MANUFACTURING )
CORP.,                        )
                              )
        Defendant.            )

**MEMORANDUM OPINION**

Before the court is defendant's motion for summary judgment. Plaintiffs, Tina Butler ("Butler") and Xan White ("White") allege that defendant, Silgan Containers Manufacturing Corp. ("Silgan"), violated the Americans With Disabilities Act ("ADA") when it terminated their employment. Plaintiffs also allege that Silgan engaged in retaliation prohibited by the ADA when it did not give them a severance package and vacation pay upon their termination. After exhausting itself in the consideration of plaintiffs' inordinately long brief, this court will, for the reasons set forth in the opinion below, grant Silgan's motion in part and deny it in part. If the court has learned anything from this experience, it is to impose a page limitation on briefs.

## **Pertinent Disputed and Undisputed Facts**

Silgan owns a facility in Tarrant, Alabama that engages in lithography, specifically, printing on plate metal designs for products such as Maxwell House Coffee cans.  Silgan bought the Tarrant facility from Kraft Foods, Inc. ("Kraft") on October 1, 1997.  Plaintiffs were clerical and administrative employees who worked for Silgan and Silgan's various predecessors in interest at the Tarrant facility for approximately 16 years prior to the end of their employment on August 31, 1998.  Plaintiffs never worked in the lithography production area, and neither of them was ever disciplined or reprimanded during her employment.

In January of 1995, both plaintiffs began to develop health problems.  Initially, they broke out in severe skin rashes, and by July of 1995, they both began to experience breathing difficulties.  Kraft, who owned the facility in 1995, began various forms of testing to try to find out the cause of plaintiffs' conditions.  Around November of 1995, Kraft sent plaintiffs to see Dr. Russell Beaty ("Beaty"), who has continued until now to treat plaintiffs.  Beaty diagnosed both Butler and White as having work-related asthma.

Kraft was not able to determine the cause of plaintiffs' conditions.  In December of 1995, Kraft moved plaintiffs to a

2

separate office space similar to a construction trailer, approximately 12 feet from the door to the office where plaintiffs once worked.  Both plaintiffs noticed improvements in their health after moving to the trailer.  Since that time plaintiffs have taken numerous medications, including asthma inhalers, to control their severe asthma.

After Silgan bought the plant from Kraft, it decided that the trailer was no longer a viable option for plaintiffs to perform their jobs because in the trailer plaintiffs were unable to perform many of their job functions, including picking up and delivering faxes, delivering mail, maintaining and delivering office supplies, acting as the receptionist, and buzzing visitors into the building.

On June 28, 1998, plaintiffs met with Plant Manager, John Chandler ("Chandler"), Human Resources Manager, Terry Abkes ("Abkes"), and Office Manager, Kathy Wilkens ("Wilkens"). Plaintiffs were told that the trailer was going to be removed because it was wasteful and ineffective.  They were told that they could keep their jobs, however, if they returned to the main office building.  Plaintiffs told Chandler that, based on Dr. Beaty's recommendation, they could not return to work in the office.

On July 28, 1998, plaintiffs filed a charge of discrimination on the basis of disability with the EEOC.  After that filing,

3

plaintiffs claim that they were told by Wilkens, who was their supervisor, that they "blew it" by filing the charge and would therefore not get severance pay.   Wilkens admits to making the statement, but says that she was joking.   Silgan claims that plaintiffs were told in June, **before** filing their EEOC charge, that they would not be receiving severance pay and that they would be paid vacation pay in accordance with Silgan corporate policy.

On August 31, 1998, plaintiffs' employment ended.   Defendant claims that plaintiffs voluntarily resigned by virtue of their refusal to return to the main office building.   Plaintiffs respond that they could not return to work because of their health conditions and therefore, that defendant unlawfully terminated them because of their disability.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of _material_ fact, not merely some factual dispute.   See _Anderson v. Liberty Lobby, Inc._, 477

4

U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiffs' favor, to see if a jury could return a verdict for plaintiffs.  If so, defendant's motion for summary judgment must be denied.  If, however, as a matter of law, a jury could not return a verdict for plaintiffs, defendant's motion must be granted.

### Count 1: Discrimination because of disability

Plaintiffs claim that they were fired because they of their disability, in violation of the ADA.  In order to prove their prima facie case, plaintiffs must show:  (1) that they have a disability; (2) that they are "qualified individuals," which is to say, that they are able to perform the essential functions of their jobs with or without reasonable accommodations; and (3) that defendant unlawfully discriminated against them because of their disabilities.  See Reed v. The Heil Company, 206 F.3d 1055, 1061 (11th Cir. 2000).  Silgan argues that plaintiffs cannot meet prongs

(1) and (2).   Therefore, the court will address those prongs separately.[1]

**(1) Whether plaintiffs have a disability.**

The ADA defines a "disability" as (A) a physical or mental impairment that substantially limits a major life activity; (B) a record of having such an impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  The plaintiffs claim that (A), (B) and (C) all apply to them.

> **(A) Whether plaintiffs suffer from a physical or mental impairment that substantially limits a major life activity.**

Silgan does not dispute that plaintiffs suffer from a physical impairment.  However, Silgan does argue that plaintiffs' impairment does not substantially limit them in any major life activity.

---

[1]   The court is not entirely sure whether plaintiffs' allegation that defendant failed to make a reasonable accommodation is **separate** from their claim that defendant discriminated against them when it terminated their employment.  In other words, are plaintiffs claiming that defendant discriminated against them by (1) failing to reasonably accommodate them **and** (2) terminating their employment, or are plaintiffs arguing that they were not reasonably accommodated as **part** of their termination claim?  Although plaintiffs will need clear this up, the distinction is irrelevant for summary judgment purposes because, as is pointed out *infra*, part of the prima facie case for disability discrimination is whether plaintiffs can show that they were "qualified individuals," which means that they were able to perform the essential functions of the job with or without a reasonable accommodation. Because plaintiffs here are claiming that they required a reasonable accommodation, they must prove, as part of their prima facie case, that they requested an accommodation and that the accommodation was reasonable.  So, whether it is part of the prima facie case, or a separate claim, the analysis of whether plaintiffs were reasonably accommodated is the same for summary judgment purposes.

Plaintiffs claim that they are substantially limited in the major life activities of working, breathing, and caring for themselves. See Pls.' Opposition to Def.'s Motion for Summ. J. at 41. The court finds that there is no evidence that plaintiffs are substantially limited in the major life activity of caring for themselves. Therefore, plaintiffs may not proceed on that theory. However, the court finds that plaintiffs have demonstrated a genuine issue of material fact with respect to whether they were substantially limited in the major life activity of breathing. While this court is well aware of the Supreme Court's recent ADA decisions which state that mitigating measures must be taken into account in determining whether an individual is substantially limited in a major life activity, See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 119 S.Ct. 2162 (1999) and Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139 (1999), the court is not convinced at this point that plaintiff's asthma medication prevents them from being substantially limited in the major life activity of breathing. In sum, based on the evidence presented and the reasonable inferences that may be drawn from that evidence, a rational fact finder could conclude that plaintiffs were substantially limited in the major life activity of breathing, even with the mitigating measures of their medication. Therefore,

7

the court will allow plaintiffs to proceed on the theory that they were substantially limited in the major life activity of breathing. Defendants are free, of course, to file a Rule 50 motion regarding this issue at an appropriate time.

However, plaintiffs will be limited to arguing that they are limited in the major life activity of breathing because this court finds that working is not a major life activity under the ADA. Although the Eleventh Circuit has repeatedly acknowledged that the EEOC guidelines interpreting the ADA include working as a major life activity, the Eleventh Circuit has not had to directly address the question of whether the regulation itself is controlling insofar as it includes working as a major life activity.

The test for determining whether the court should defer to an administrative agency's interpretation of a statute was outlined by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984). First, the court must ask whether Congress has spoken directly to the question at issue. If so, that is the end of the inquiry because any regulations to the contrary cannot stand. If Congress has not spoken directly to the question, the court must determine whether any agency has been given the authority to interpret the statute and if so, if the agency's interpretation is a permissible one.

8

In this case, Congress defined the term "disability," and, as stated *supra*, one of the definitions of disability is an "impairment that substantially limits one or more major life activities." However, Congress did not further elaborate on the term "major life activity." Therefore, the court moves to the second part of the <u>Chevron</u> analysis. The court finds that the EEOC regulation at issue, insofar as it defines work as a major life activity, is not binding for two reasons. First, this court does not believe that the EEOC has been given the authority to interpret the term "disability." Although the Supreme Court has not directly decided this issue, it recently stated:

> No agency has been given authority to issue regulations implementing the generally applicable provisions of the ADA. . . . Most notably, no agency has been delegated the authority to interpret the term 'disability.' § 12102(2). [The dissent's] imaginative interpretation of the Act's delegation provisions. . . is belied by the terms and structure of the ADA.

<u>Sutton</u> at 2145.

Therefore, this court finds that the EEOC was not given the authority to "gap fill" by defining the words "major life activity."

Second, even if Congress impliedly gave the EEOC the authority to interpret the term "disability," the court finds that the EEOC's inclusion of working as a major life activity is not a permissible

construction of the statute.  Again, this court finds support for

its decision from the United States Supreme Court.  Although not

expressly deciding the issue (because neither party challenged the

EEOC's regulation insofar as it defined working as a major life

activity), the Court stated:

> Because the parties accept that the term "major life
> activities" includes working, we do not determine the
> validity of the cited regulations.  We note, however,
> that there may be some conceptual difficulty in defining
> "major life activities" to include work, for it seems "to
> argue in a circle to say that if one is excluded, for
> instance, by reason of an impairment, from working with
> others,... then that exclusion constitutes an impairment,
> when the question you're asking is, whether the exclusion
> itself is by reason of handicap."  Tr. Of Oral Arg. In
> School Bd. of Nassau Co. v. Arline, O.T.1986, No. 85-
> 1277, p.15 (argument of Solicitor General).  Indeed, even
> the EEOC has expressed reluctance to define "major life
> activities" to include working and has suggested that
> working be viewed as a residual life activity,
> considered, as a last resort, only "[i]f an individual is
> not substantially limited with respect to any other major
> life activity."
>
> Sutton at 2151(internal citations omitted).

The Supreme Court's point is well taken by this court, which

**has** been asked to directly address the question of whether working

is a major life activity.  Put simply, if the relevant question

under the ADA is whether someone is substantially limited in a

major life activity which precludes them from working (or at least

precludes them from working without a reasonable accommodation),

10

then how can working itself be the major life activity which precludes them from working?  To state the question "out loud," so to speak, illustrates the circularity of defining working as a major life activity and, accordingly, the unreasonableness of the EEOC's definition.   Therefore, this court holds that the regulation, insofar as it includes working as a major life activity, is invalid, and plaintiffs may not argue to the jury that they are substantially limited in the major life activity of working.[2]

Finally, the court must address a point which Silgan spends a lot of time discussing: plaintiffs' judicial admissions in their complaint.  Silgan argues that because the plaintiffs admitted in their complaint that they had "definite improvement and decreased need for medication as long as they stayed out of the plant," any subsequent testimony that plaintiffs had rashes or respiratory problems other than at the plant directly contradicts the admission in their complaint, and therefore, plaintiffs cannot be said to be substantially limited in any major life activity.   The court disagrees.  The plaintiffs admitted that their conditions **improved**

---

[2]   The court notes that Judge Buttram of this district recently held that working is not a major life activity under the Rehabilitation Act.  See Mullins v. Crowell, 74 F.Supp.2d 1067 (N.D. Ala. 1999).  He relied on the same Supreme Court language from Sutton cited by this court in so holding.

11

and that their need for medication **decreased**, not that their health problems were non-existent so long as they weren't at work.    The statements in the complaint do not bind plaintiffs to what Silgan claims they are bound to, namely, that they had no problems whatsoever with rashes or breathing while they were away from the plant.    Instead, the plaintiffs are bound to exactly what they said: that their conditions improved while away from the plant.

### (B) Whether plaintiffs have a record of an impairment that substantially limits a major life activity

Plaintiffs make a somewhat confusing argument that they had a record of an impairment that substantially limited one or more major life activities.    They offer two main pieces of evidence in support of their argument: the buy/sell agreement between Kraft and Silgan and the employment contracts between plaintiffs and Silgan in which Silgan expressly agreed to cover plaintiffs' pre-existing health conditions.    This evidence is not a "record of an impairment" that substantially limits one or more major life activities.    The Eleventh Circuit has held that an individual attempting to establish a record of an impairment must show that at some time in the past (in this case, meaning, before the alleged adverse employment action), she was classified as having an impairment that substantially limited a major life activity.    The

12

evidence pointed to by plaintiffs does not meet this standard.  The buy/sell agreement, for example, states that Silgan does not assume the liability for any claims arising out of the medical disability of White and Butler "as a result of an apparent idiosyncratic allergic reaction of undetermined origin." § 4.02(n), Buy/sell agreement between Kraft and Silgan.  Although the term disability is used, Silgan obviously did not intend to use it as a legal term of art, because in the same sentence it describes plaintiffs' "disability" as an "idiosyncratic allergic reaction of undetermined origin."  Silgan's acknowledgment that plaintiffs had experienced an "idiosyncratic allergic reaction" is not the equivalent of Silgan classifying plaintiffs as substantially limited in one or more major life activities.  Likewise, a document which indicates nothing more than that Silgan agreed to provide health coverage for plaintiffs despite their pre-existing asthma condition does not qualify as a record of an impairment that substantially limits one of more major life activities.  Therefore, the court will grant defendant's motion for summary judgment as to this claim.

### (C) Whether Silgan regarded plaintiffs as having an impairment that substantially limited one or more major life activities

The Supreme Court has pointed out that there are two ways in which an employer can violate this prong: either by regarding the

13

employee as a having a substantially limiting impairment when in fact the impairment is not so limiting, or by regarding the employee as having an impairment that the employee does not have at all. See Sutton at 2149-2150. This is one of the more confusing parts of the ADA in application, because often plaintiffs argue both (A) and (C). However, subsection (C) essentially should be argued **in the alternative** to subsection (A) because if one is **actually** disabled under (A), then the provisions of (C) logically cannot apply. Therefore, assuming that plaintiffs cannot show that they are actually disabled under (A), they argue that they were unlawfully regarded as disabled under (C). The court finds that plaintiffs have not shown that they were regarded as disabled in any major life activity. In fact, Silgan's primary argument throughout its summary judgment brief is that plaintiffs' symptoms and conditions were present **only** when they were at work in the original office, which obviously means that Silgan did not regard plaintiffs as substantially limited in any major life activities. Therefore, plaintiffs may not proceed on the "regarded as" theory.

**2. Whether plaintiffs requested an accommodation and whether that accommodation was reasonable**

The court finds that plaintiffs have at least demonstrated a genuine issue of a material fact with respect to whether they

14

requested any reasonable accommodations. The court reminds plaintiffs, however, that the burden remains on them to prove to the jury: (1) that they requested an accommodation and (2) that the accommodation(s) they requested was/were reasonable. <u>See</u> <u>Earl v.</u> <u>Mervyns, Inc.</u>, 207 F.3d 1361, 1367 (11th Cir. 2000) (noting that the burden of identifying an accommodation rests with the employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable). Assuming that the plaintiffs can meet their burden, Silgan could still prevail if it proves that the requested accommodation(s) would have caused an undue hardship. However, the court will not address Silgan's burden because Silgan, apparently confident of its argument that any accommodations requested by plaintiffs were unreasonable, did not make an undue hardship argument in its motion for summary judgment. Therefore, the court will allow plaintiffs to proceed on their disability claim to the extent that they are arguing that they were substantially limited in the major life activity of breathing.

### Count 2: Retaliation

In order to establish a prima facie case of retaliation under the ADA, plaintiffs must show: (1) that they engaged in statutorily protected activity; (2) that they suffered an adverse employment action; and (3) that there is a causal link between the protected

15

activity and the adverse action.  <u>See</u> <u>Goldsmith v. City of Atmore</u>,

996 F.2d 1155, 1163 (11th Cir. 1993).   Plaintiffs engaged in

protected activity under the ADA when they filed a charge of

discrimination with the EEOC on July 28, 1998.  They claim that

they suffered two adverse employment actions as a result: (1)

denial of a severance package and (2) denial of vacation pay to

which they claim they were entitled.

Silgan argues that there was no adverse employment action

because its pre-existing policies precluded plaintiffs from

receiving either a severance package or more than their accrued

vacation time.  However, this argument is based on Silgan's premise

that plaintiffs voluntarily resigned instead of on plaintiffs'

premise that they were terminated unlawfully.  Because this is a

disputed issue in this case, the court will not grant summary

judgment in favor of defendant as to plaintiffs' retaliation claim

on the basis that because plaintiffs voluntarily resigned, they

were not entitled to the disputed benefits and therefore,

experienced no adverse employment action.

Silgan's second argument is that there was no causal

connection between its denial of severance and plaintiffs' filing

of their EEOC charge because Silgan had already decided and

communicated to plaintiffs that they would not get severance,

**before** plaintiffs filed their charge.   The court agrees with Silgan.  On July 9, 1998, Butler and White sent a letter to John Chandler which stated, "At our 6-29-98 meeting where we [sic] told we were being terminated, we verbally requested a severance package from Silgan and this request was denied by Terri Abkes."   Also, on July 28, 1998, plaintiffs sent a letter to Abkes, requesting that Silgan's decision to deny their request for severance be reevaluated.  (Abkes Depo., Ex. 4.)   Therefore, the plaintiffs' EEOC charge, which was filed on July 28, 1998, could not have caused Silgan to deny plaintiffs' request for severance packages because it is evident that Silgan had already decided not to offer plaintiffs the package.  The fact that Wilkens testified that she jokingly told the plaintiffs that they would not get severance because of their EEOC charge does not change the fact that Silgan had decided, **and communicated to plaintiffs**, a month before they filed their EEOC charge, that they would not get severance. Therefore, the court will grant Silgan's motion as to this portion of plaintiffs' retaliation claim.

As to plaintiffs' claim that they were retaliated against when they were not given vacation pay to which they were entitled, the court concludes that there are disputed issues of material fact

regarding this particular claim.  Plaintiffs claim that they asked Abkes if they would get paid for their vacation and she told them that they would.  Plaintiffs then claim that "after filing their EEOC charge, they were told that their vacation would be prorated and they would not be paid for those days that had not been accrued."  Pls.' Opposition to Def.'s Motion for Summ. J. at 77. Defendants respond that plaintiffs were only entitled to prorated vacation pay, in accordance with Silgan's standard vacation pay policy.  Despite the lengthy briefs filed by both parties, the facts regarding plaintiffs' vacation pay are not clear to this court.  The court is not certain exactly what amount of vacation time plaintiffs allege they were entitled to, but did not receive, and Silgan does not explain it sufficiently to allow the court to grant summary judgment for Silgan.  Therefore, the court cannot determine at this point whether plaintiffs actually suffered an adverse employment action with respect to vacation pay. Accordingly, the court finds that there are disputed issues of material fact with regard to plaintiffs' retaliation claim insofar as it pertains to vacation pay, and will deny defendant's motion as to that portion of plaintiff's retaliation claim.

### Count 3: Disability Harassment

Silgan claims that plaintiffs did not exhaust their administrative remedies as to their claim of disability harassment. Silgan argues that because plaintiffs did not make a claim of harassment in their original EEOC charge, their attempt to add this claim via their amended complaint is improper. The general rule is that any claims not raised in an EEOC charge may not be later added in the complaint or in any amendments to the complaint. However, one exception is for allegations that are "reasonably expected outgrowths" of the EEOC's investigation of the charged conduct. See Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989) and Sanchez v. Standard Brands, Inc., 431 F.2d 455, 467 (5th Cir. 1970). Plaintiffs argue that their claim for disability discrimination was a reasonably expected outgrowth of the EEOC's investigation into their complaint that they were terminated in violation of the ADA. In support of their argument, plaintiffs point to a letter from the EEOC investigator who investigated and assessed their original claim of disability discrimination. Plaintiffs argue that their harassment claim was a reasonably expected outgrowth of the EEOC's investigation because when investigator requested additional information, part of the "additional information" they provided included information regarding disability **harassment**.

19

However, this court finds that plaintiffs' claim for harassment was not a reasonably expected outgrowth of their claim for wrongful termination in violation of the ADA. The EEOC investigator's letter stated that, based on the information provided him, he could not conclude that plaintiffs were victims of discrimination. The letter then stated, "However, if you have any additional information or documentation which you would like considered, please submit it. . ." This statement obviously meant that the EEOC would consider any additional information regarding the claim plaintiffs had **already** made. The EEOC was not inviting additional information regarding **other** possible claims. Therefore, the court finds that plaintiffs did not exhaust their administrative remedies with respect to their disability harassment claim.

Even if the court determined that the disability harassment claim was a reasonably expected outgrowth of plaintiffs' original claim, plaintiffs' allegations of harassment do not rise to the level of severity or pervasiveness as required by the law. As the Supreme Court has made clear,

> [N]ot all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. . . . For [harassment] to be actionable, it must be sufficiently

severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment.

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986)(citations omitted).

Factors to consider in determining whether the harassment is sufficiently severe or pervasive include the frequency of the conduct, the severity of the conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work. See Edwards v. Wallace Community College, 49 F.3d 1517, 1521-22 (11th Cir. 1995)(citing Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 372 (1993)).

Plaintiffs have not presented evidence of harassment that meets the standards outlined above.  They have presented general, vague allegations of harassing comments and a specific instance of alleged harassment involving their request that a deodorizer in the office be disconnected.  The court finds that these allegations are insufficient as a matter of law to constitute harassment so severe or pervasive as to alter plaintiffs' working conditions. Therefore, the court will grant defendant's motion as to that claim.

21

## Conclusion

A separate and appropriate order will be entered.

DONE this __22nd__ day of June, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE